STATE OF NORTH CAROLINA v. KENTON THOMAS STINSON

No. COA96-875

(Filed 19 August 1997)

1. Kidnapping § 24 (NCI4th)— first-degree kidnapping, rape, indecent liberties—instructions—reliance on same sexual act—judgment arrested

Judgment was arrested on a first-degree kidnapping conviction and the case remanded for resentencing on second-degree

STATE v. STINSON

[127 N.C. App. 252 (1997)]

kidnapping where defendant was convicted of first-degree kidnapping, second-degree rape, and indecent liberties and an ambiguity in the trial judge's instructions made it impossible to determine whether the jury relied on the same sexual act to convict defendant of first-degree kidnapping, and/or second-degree rape and indecent liberties.

**2. Kidnapping § 26 (NCI4th)— first-degree kidnapping— instruction on felonious restraint—denied—insufficient evidence**

The trial court did not err by instructing the jury on first-and second-degree kidnapping but refusing to instruct the jury on felonious restraint as a lesser included offense where there was no evidence presented by either party that the victim was restrained for any purpose other than a sexual assault.

**3. Evidence and Witness § 1255 (NCI4th)— statements to detective—subsequent to invocation of right to counsel— initiated by defendant**

The trial court did not err by denying defendant's motion to suppress statements he made to a police detective after invoking his right to counsel where defendant made the statement while handcuffed and being transported to the Intake Center immediately after asking for an attorney. The detective's conduct was not reasonably likely to elicit a response from defendant; rather, it is the type of conduct which regularly occurs in the daily practice of law enforcement.

Appeal by defendant from judgments entered 17 January 1996 by Judge James U. Downs in Mecklenburg County Superior Court. Heard in the Court of Appeals 2 April 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Sondra C. Panico, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant Kenton Thomas Stinson.*

McGEE, Judge.

Defendant appeals judgments convicting him of first degree kidnapping, second degree rape and indecent liberties filed 11 January 1996. The State's evidence tended to show that on the morning of 16

September 1994 the 14-year-old victim and her younger brother missed the school bus and rode the city bus to downtown Charlotte. The two children went to Big Ben's Grocery Store (Big Ben's) where they called their grandmother for a ride home. While at the store, they were approached by defendant who offered to drive the children to their grandmother's home. The children accepted and voluntarily entered defendant's car. The victim's brother told defendant to take him to his uncle's house and the victim asked to be taken to her grandmother's house.

The victim testified that after defendant had taken her brother to his uncle's house, defendant then asked the victim, who had remained in the car, how she intended to pay him for the ride and asked if she wanted to go to the park with him. Defendant then drove past the victim's grandmother's house without stopping despite the victim's statement that she could not go with him because her grandmother would be looking for her. Once they arrived at the park, defendant parked near the woods and began to kiss the victim and attempted to pull her pants down. She told defendant "no" but defendant did pull her pants down. The victim then told defendant "no" again, but defendant again pulled her pants down and told her that she had "no other choice because ain't nobody out here." The victim testified that the angry tone of defendant's voice scared her and made her think defendant "would kill [her] or something." The victim then testified defendant climbed on top of her and pushed back the car seat. She told defendant to use a condom because she was menstruating. After putting on a condom, defendant then had sex with her. After he was done he said to the victim, "Are you sure you're 14; because, you make love like you're 18." The victim further testified that she then put her clothes back on and he drove her home without making any stops.

The victim told her grandmother she had been raped and she was taken to the hospital where she was examined by Dr. Timothy Scott Missbach. Dr. Missbach testified that although he found no internal or external trauma, his findings were consistent with the victim's statement that she had been raped.

Detective Willie Lynn interviewed the victim and she described defendant and his car to the detective. Based on the victim's description and the detective's subsequent interview of an employee at Big Ben's where defendant had negotiated checks, the detective identified the temporary service where defendant worked, and from this

source obtained defendant's address in Concord, North Carolina. After obtaining a warrant for defendant's arrest, the detective went to the Concord Police Department on 26 October 1994, and later that day accompanied Lieutenant Arthur of the Concord Police Department to defendant's house in a marked car. Detective Lynn told defendant of the warrants and defendant agreed to go to the Charlotte police department with him. Defendant was placed in an interrogation room upon arrival.

Inside the interrogation room, Detective Lynn read defendant his Miranda rights and asked defendant to sign a waiver of rights form. Defendant did not sign the form but instead wrote on it that he was afraid to sign and wanted a lawyer. The detective placed handcuffs on defendant and placed him in a police car and began escorting him to the Intake Center. On the way to the Intake Center defendant began to tell Detective Lynn his version of what had occurred on the day the alleged kidnapping took place. Defendant was advised by Detective Lynn that he did not have to talk to him. Defendant then told the detective that he wanted to cooperate and proceeded to tell Detective Lynn that he had given the victim and her brother a ride home and that after the brother was dropped off at his uncle's house, he asked the victim, who remained in the car, if she wanted to "hang out with him." According to defendant, the victim said "yes." He then drove to the park and told the victim to take off her pants. He admitted that he had consensual intercourse with the girl and that digital penetration of the girl had occurred. He then stated that he drove the girl home after stopping to buy her some chips and something to drink.

At the close of the evidence, the trial judge instructed the jury on first degree kidnapping, indecent liberties with a minor, and second degree rape. The trial judge instructed the jury in part that in order to enter a verdict of guilty on the first degree kidnapping charge, the jury must find:

[f]irst, that the defendant, unlawfully confined [the victim]. . . . that is, that he imprisoned her, within a given area; and/or that he restrained her person. That is, [he] restricted her freedom of movement; and/or that he removed [the victim] from one place to another.

. . . [the victim] had not reached her 16th birthday; and, that her parent, guardian and/or custodian, did not consent to this confinement, and/or restraint, and/or removal.

Consent obtained or induced by fraud or fear is not consent.

Third, . . . that the defendant confine[d] and/or restrain[ed]; and/or removed [the victim] for the purpose of committing second-degree rape.

The trial judge also instructed the jury that to convict the defendant of second degree rape it must find that the State proved three elements:

[f]irst, that the defendant engaged in vaginal intercourse with [the victim]. Vaginal intercourse is the penetration, however slight, of the female sex organ by the male sex organ; and, the actual emission of semen is not even necessary.

Second, that the defendant used or threatened to use force sufficient to overcome any resistance that [the victim] might have made.

The force necessary to constitute rape does not have to be actual physical force. Fear or coercion may take the place of physical force.

And [third] . . . that [the victim] did not consent . . . that is, the vaginal intercourse, was against her will.

The trial judge also instructed the jury that "indecent liberties" is defined as "immoral, improper or indecent touching or act by the defendant upon the child" and to convict defendant on this charge, the jury must find:

[t]hat [defendant] engaged in vaginal intercourse with [the victim] and/or that he penetrated her vaginal area or vagina with his finger. . . . that the [victim] had not reached [her] 16th birthday . . . that the defendant was at least 5 years older than the child; and had reached his 16th birthday, at that time.

The jury found defendant guilty of all charges and he was sentenced to forty years in prison for first degree kidnapping, a consecutive term of forty years for second degree rape, and ten years for taking indecent liberties with a minor consecutive to the rape conviction.

[1] The defendant argues that his Fifth Amendment rights against double jeopardy were violated when he was convicted of first degree kidnapping, second degree rape, and indecent liberties based on the

sexual intercourse and digital penetration of the victim. We agree. In North Carolina, kidnapping is elevated from a second degree crime to a first degree crime "[i]f the person kidnapped was not released by the defendant in a safe place or had been seriously injured or *sexually assaulted.*" N.C. Gen. Stat. § 14-39(b) (1994) (emphasis added). If the defendant is convicted of other crimes for actions committed against the kidnapped victim, these same actions cannot be used to satisfy the sexual assault element of the kidnapping conviction to elevate the conviction to first degree. *State v. Belton*, 318 N.C. 141, 161, 347 S.E.2d 755, 767 (1986), *overruled on other grounds, State v. Gaines* 345 N.C. 647, 483 S.E.2d 396 (1997). As our Supreme Court stated in *Belton*, the principal case relied on by defendant in his appeal, if "the rape of [the victim] was the only sexual assault which could have formed the 'sexual assault' element of the first degree kidnapping" defendant is charged with, defendant cannot be convicted of both crimes. *Id.* We hold that this case is controlled by *Belton.* As in *Belton*, the defendant in this case was convicted of more than one crime arising out of his sexual encounter with the victim. The State argues that this case is distinguished from *Belton* "because there was more than one sexual assault committed by the defendant." Specifically the State argues that because the acts of vaginal rape and digital penetration are two distinct acts, the jury could have found that the digital penetration, rather than the vaginal rape, constituted the sexual assault element of first degree kidnapping, and thus there would be no violation of defendant's rights against double jeopardy for the rape conviction and the first degree kidnapping conviction. The State's argument is mere speculation as the trial court did not instruct the jury of this limitation necessary to avoid double jeopardy. There is nothing in the record to so indicate that without this limiting instruction the jury did not rely on evidence of the same sexual act for either or both the rape and indecent liberties conviction in addition to relying on the same sexual act for the first degree kidnapping conviction. The protection of a defendant's constitutional rights must be guaranteed, and our Supreme Court has "held that it cannot assume the jury adopted a theory favorable to the state" not in violation of the defendant's rights when there are "alternative theories of conviction . . . available to a jury" and must construe the "ambiguity in favor of defendant." *Id.* at 162, 347 S.E.2d at 768. We thus find error in the trial judge's instructions as there is ambiguity as to whether the jury relied on the same sexual act to convict for first degree kidnapping and/or second degree rape and indecent liberties.

We must next determine the proper procedure to cure this error. Our Supreme Court has suggested two possible remedies in a case involving a first degree kidnapping and a rape conviction: "(1) arrest judgment on the first degree kidnapping conviction and resentence defendants for second degree kidnapping or (2) arrest judgment in either the rape or the sex offense convictions." *Id.* at 161, 347 S.E.2d at 767. Because it is impossible to determine from the record whether the same sexual acts used for the rape and indecent liberties convictions were the basis of the jury's first degree kidnapping conviction, we cannot ascertain whether either or both of these convictions in combination with the kidnapping conviction is unconstitutional. Rather than arresting judgment on both the rape and indecent liberties convictions, the remedy most consistent with the jury's verdict and the one we order is to arrest judgment on the first degree kidnapping conviction and remand the case to the trial court to resentence defendant for second degree kidnapping. The remaining judgments are not affected.

[2] Defendant next argues the trial court erred by instructing the jury on first and second degree kidnapping and refusing to instruct the jury on felonious restraint as a lesser included offense. We disagree. The distinction between felonious restraint and the kidnapping instruction is that the former does not require the state to prove defendant's purpose for the restraint. A trial court is only required to instruct the jury on a lesser included offense when there is evidence presented from which the jury could find that such offense was committed. *State v. Shaw*, 106 N.C. App. 433, 439, 417 S.E.2d 262, 266, *cert. denied*, 333 N.C. 170, 424 S.E.2d 914 (1992). "[W]hen the defendant denies having committed the complete offense for which he is being prosecuted, and evidence is presented by the State of every element of the offense, and there is no evidence to negate these elements other than the defendant's denial that he committed the offense, then no lesser included offense need be submitted." *Id.* "The mere contention that the jury might accept the State's evidence in part and might reject it in part is not sufficient to require submission to the jury of a lesser offense." *State v. Cerate*, 109 N.C. App. 344, 351, 427 S.E.2d 124, 128 (1993). In this case defendant denied restraining the victim for any purpose. The only evidence presented by the State as to this element is that defendant restrained the victim for the purpose of sexually assaulting her. As there was no evidence presented by either party that she was restrained for any other purpose than a sexual assault, no instruction for a lesser included offense of felonious restraint is required. *Id.*

**STATE v. STINSON**

[127 N.C. App. 252 (1997)]

**[3]** Next defendant argues the trial court erred in denying his motion to suppress statements made to Detective Lynn after he had invoked his right to counsel. We disagree. Statements voluntarily made to officers after this right of counsel has been invoked, when not solicited by "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response" do not violate defendant's right to counsel. *State v. Leak*, 90 N.C. App. 351, 356, 368 S.E.2d 430, 433 (1988) (holding admissible statements voluntarily made by defendant after he invoked his right to an attorney) (quoting *Rhode Island v. Ignis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)); *State v. Chapman*, 343 N.C. 495, 500, 471 S.E.2d 354, 357 (1996) (An officer's "offers of reward, or inducements to the defendant to make a statement" are circumstances indicating confession is involuntary).

In this case the evidence presented by defendant tended to show that immediately after defendant asked for an attorney he was placed in handcuffs and taken to jail and told by Detective Lynn that the detective would speak to the magistrate on behalf of. defendant. There was no evidence presented that the detective's statement that he would talk to the magistrate contained a promise to defendant to free him or otherwise lessen his punishment in exchange for any statement by defendant. Nor is the detective's handcuffing of defendant the type of conduct reasonably likely to elicit a response from defendant, but rather it is the type of conduct which occurs regularly in the daily practice of law enforcement. We thus find no merit to this argument.

We do not address defendant's final argument as it is waived pursuant to Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure as defendant did not timely object to the instruction at trial.

No error in part; remanded for resentencing.

Judges COZORT and MARTIN, John C., concur.

Judge COZORT concurred in this opinion prior to his resignation 31 July 1997.