STATE OF NORTH CAROLINA v. ANGELA DEBORAH LEWIS, Defendant

No. COA03-785

(Filed 19 October 2004)

**Constitutional Law— right of confrontation—testimonial hearsay—identification by photographic line-up**

Although defendant contends the trial court erred in an assault with a deadly weapon inflicting serious injury, non-felonious breaking or entering, and robbery with a dangerous weapon case by admitting the testimony of an officer concerning statements made by the victim to him at her apartment and statements by another officer concerning the victim's identification of her in a photographic line-up under the residual hearsay

**STATE v. LEWIS**

[166 N.C. App. 596 (2004)]

exception of N.C.G.S. § 8C-1, Rule 804(b)(5) after the victim died of unrelated causes, defendant's argument is not reached because the admission of the evidence was a violation of defendant's Sixth Amendment rights under the Confrontation Clause and defendant is entitled to a new trial on that ground since: (1) both the victim's statement to the police and her identification of defendant in the photo line-up constitute testimonial evidence that are inadmissible based on the fact that the witness was unavailable and defendant did not have a proper opportunity to cross-examine; (2) the fact that the information provided may be quite reliable or trustworthy is irrelevant; and (3) it cannot be concluded that the error was harmless beyond a reasonable doubt because once the evidence by the victim is excluded, there is no eyewitness testimony available giving an account of the crime or anyone who can place defendant with the victim during the time of its commission, there is no forensic evidence, and defendant never confessed to the crime.

Appeal by defendant from judgment entered 28 January 2003 by Judge James C. Spencer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 17 March 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Victoria L. Voight, for the State.*

*Paul M. Green for defendant-appellant.*

ELMORE, Judge.

Angela Deborah Lewis (defendant) appeals from convictions for assault with a deadly weapon inflicting serious injury, non-felonious breaking or entering, and robbery with a deadly weapon.

I.

The State's evidence tended to show that on 8 January 2002, Nellie Carlson (Ms. Carlson), an elderly resident of Glenwood Towers in Raleigh, was discovered in her apartment by friend and neighbor Ida Griffin (Ms. Griffin). Ms. Griffin testified that she found the door ajar and entered, discovering her friend's apartment "just tore up all around." She noticed a broken flashlight, a phone left off the hook, and items from the coffee table strewn across the floor. Ms. Carlson was discovered "sitting at the table with her head hung down." She was swollen, bloody, and badly bruised. Ms. Griffin summoned

STATE v. LEWIS

[166 N.C. App. 596 (2004)]

another neighbor, John Woods (Woods), for help, and they called the police. Woods would later tell police and testify at trial that he had seen defendant entering Glenwood Towers around noon the day of the incident.

After Officer Narley Cashwell (Officer Cashwell) of the Raleigh Police Department arrived, he summoned medical assistance and took the following statement from Ms. Carlson:

> I was in the hall opening my door. My door was locked. I—I was at the door and she slipped up behind me. She asked me for some money. I said what do I look like, the money tree. She said—she said, you don't like me because I'm black. I told her I don't like whatever color she was. I opened the door and she pushed me inside. She grabbed my hair and pulled my hair. She hit me with her fist. She also hit me with a flashlight, phone and my walking stick. She hit me in the ribs with my walking stick. She took a small brown metal tin that I had some change in. I also had some change on the table that she took. I know her. She comes up here all the time begging for money. She visits a man at the end of the hall. I don't know her name but he might.

Ms. Carlson described the assailant as "a black female in her 20s . . . [d]ark skin, about five nine in height, blue jeans and a homeless look." Ms. Griffin, Woods, and DeWayne Davis, a courtesy officer at Glenwood Towers, all recognized the description of the alleged assailant, but none could remember her name.

Officer Mark Utley (Officer Utley) of the Raleigh Police Department along with the Glenwood courtesy officer interviewed Burlee Kersey (Kersey), another resident believed to be familiar with the assailant. Kersey provided the name Angela Lewis in response to a description and the statement that she "comes over here all the time." Some days later, Davis found in his records a trespassing citation he had previously written to someone named Angela Lewis.

A medical examination showed that Ms. Carlson suffered bruising over her left eye, a contusion to her right frontal lobe, and a contusion to the right lower lobe of her lung. It was later confirmed that she had also suffered fractures to three of her ribs. While she was still in the hospital on the day of her attack, Officer Utley presented Ms. Carlson a photo line-up consisting of six photographs, including one of defendant. According to Officer Utley, Ms. Carlson identified defendant as her assailant.

STATE v. LEWIS

[166 N.C. App. 596 (2004)]

At 6:05 pm on the day of Ms. Carlson's attack, Raleigh Police responded to a complaint by a woman reporting an assault and robbery against her near Glenwood Avenue. When police arrived, they found defendant, Angela Lewis, who gave her name as Angela Smith. She was bleeding and reported having been attacked from behind and robbed. The home address given by defendant was located at the Glenwood Towers. She provided two different Social Security numbers and gave other inconsistent information in her account of the alleged attack.

Defendant was transported to Wake Medical Center and taken in for questioning after being released from the hospital. She identified Kersey as a friend of hers whom she had previously visited, but she denied having been at Glenwood Towers that day.

No usable finger prints were recovered from Ms. Carlson's apartment. Roughly three months after this event, Ms. Carlson died of pneumonia and cancer. It was stipulated at trial that Ms. Carlson's death was "unrelated to the alleged commission of these offenses."

Defendant was tried on charges of assault with a deadly weapon inflicting serious injury, felonious breaking or entering, and robbery with a deadly weapon. At trial, defendant tried to exclude from evidence Ms. Carlson's statement to Officer Cashwell and her identification of defendant in Officer Utley's photo line-up. Both extrajudicial statements were admitted under the residual hearsay exception. North Carolina Rule of Evidence 804(b)(5) (2004). A jury found defendant guilty of all charges except the charge of felonious breaking or entering, on which she was found guilty of the lesser included offense of non-felonious breaking or entering. The trial court sentenced defendant to 192 to 249 months imprisonment. Defendant appeals. For the reasons stated herein, we reverse defendant's conviction and order a new trial.

## II.

Defendant contends that two pieces of testimony introduced at trial were not properly admitted under the North Carolina Rules of Evidence. First, defendant alleges that it was error for the trial court to have allowed Officer Cashwell's testimony concerning statements made by Ms. Carlson to him at her apartment. At trial, defendant objected to Officer Cashwell's testifying as to what Ms. Carlson had stated to him, but following a *voir dire* this objection was overruled and the court concluded that this testimony could be admitted under

the residual hearsay exception. N.C.R. Evid. 804(b)(5) (2004). Second, Defendant argues that Officer Utley's testimony concerning Ms. Carlson's identification of her in a photographic line-up was also inadmissible hearsay. The record reflects that defendant properly objected to this testimony when offered at trial and thus preserved both issues for review.

On appeal, defendant argues that the trial court's findings regarding Ms. Carlson's statement to Officer Cashwell were insufficient to establish the "circumstantial guarantees of trustworthiness" necessary to admit a statement under the residual hearsay exception. N.C.R. Evid. 804(b)(5) (2004). Furthermore, defendant contends that the photo line-up would not fall under any exception to the prohibition on hearsay. N.C.R. Evid. 802 (2004). We, however, do not reach defendant's argument in reliance upon the North Carolina Rules of Evidence, because we conclude that admission of this evidence was a violation of defendant's rights under the Confrontation Clause of the United States Constitution's Sixth Amendment.

## A. Confrontation Clause

"Our review of whether defendant's Sixth Amendment right of confrontation was violated is three-fold: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004) (citing *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004)).

Because of the recent United States Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), we must first consider whether either of the statements at issue is properly classified as testimonial or nontestimonial. *State v. Blackstock*, 165 N.C. App. 50, 62, 598 S.E.2d 412, 420 (2004) ("Thus under *Crawford*, Sixth Amendment Confrontation Clause analysis will usually turn on the question of whether a particular statement is testimonial or nontestimonial in nature."). In *Crawford*, the Supreme Court abandoned the rationale of *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980), which had previously articulated which hearsay statement may be admitted at trial without violating the Sixth Amendment's Confrontation Clause. Under *Crawford*, courts must now draw a distinction between testimonial and nontestimonial evidence. If the evidence is nontestimonial, then "it is wholly con-

sistent with the Framers' design to afford the States flexibility in their development of hearsay laws—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. If, however, the evidence is testimonial in nature, then "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.*

## B. Testimonial Evidence

The decision in *Crawford* refused to define exactly what qualifies as testimonial evidence. The Court, however, specifically stated, "Whatever else the term [testimonial evidence] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to *police interrogations.*" *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203 (emphasis added).

In the case *sub judice*, we determine whether either of Ms. Carlson's statements should be classified as testimonial evidence having been given in the course of a police interrogation.

This Court interpreted *Crawford* and the nature of the term "police interrogations" in *State v. Pullen*, 163 N.C. App. 696, 594 S.E.2d 248 (April 20, 2004) (No. 03-234). In *Pullen*, this Court ruled that a non-joined co-defendant's confession made to police in the course of their investigation was testimonial in nature. *Pullen*, 163 N.C. App. at 702, 594 S.E.2d at 252. Subsequently, this Court held that a witness's statements, including an affidavit, provided to police for the purpose of identifying a defendant and recounting events surrounding a crime are classified as testimonial. *Clark*, 165 N.C. App. at 284, 598 S.E.2d at 217-18. *See also*, *Moody v. State*, 594 S.E.2d 350, 354 n. 6 (Ga. 2004) (holding field investigations of witnesses by police to be testimonial evidence under *Crawford*). At trial, Officer Cashwell introduced Ms. Carlson's statement to him in his testimony. Because this information was taken in the course of a police investigation and provided evidence substantially similar in nature to that at issue in *Pullen* and *Clark*, we conclude that it was testimonial in nature.

Similarly, Officer Utley introduced Ms. Carlson's identification of the defendant in his photographic line-up. As in *Clark*, both the initial statement and the photo identification had been given to the police in the course of an investigation and used for the purpose of identifying the assailant. Just like Ms. Carlson's first statement, her identification in the photo line-up provided information that implicated defendant

and that was presented at trial in order to establish the State's case against defendant.

Hearsay, which is generally inadmissible, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c) (2004). In this case, this evidence was offered to establish the truth of the matter asserted, i.e., the identity of the assailant. There was no instruction preventing the jury from using it for such a purpose, and indeed it did not appear to be offered for any other purpose. *See, e.g., Tennessee v. Street*, 471 U.S. 409, 414, 85 L. Ed. 2d 425, 431 (1985) (permitting uses of out-of-court statements for purposes other than establishing the truth of the matter asserted). In fact, the State's case relied heavily upon the evidence from the late Ms. Carlson to establish defendant's guilt.

A photo line-up was also employed by the police in *Clark*, but defendant failed to argue its inadmissability to this Court, and the assignment was deemed abandoned. As such, we are left to consider the photo identification in the case *sub judice* as a matter of first impression in this jurisdiction. In substance, the information obtained from a photo line-up is not very different from other evidence that is classified as testimonial under *Crawford*. Indeed, the photo line-up is very similar to the ex parte and extra-judicial examinations by government officials which *Crawford* makes clear the Sixth Amendment was meant to address. *Crawford*, 541 U.S. at 51-53, 158 L. Ed. 2d at 192-93; *see, e.g., State v. Webb*, 2 N.C. 103, 104 (1794) ("no man shall be prejudiced by evidence which he had not the liberty to cross-examine"); *see also State v. Forrest*, 164 N.C. App. 272, 280 596 S.E.2d 22, 27-28 (2004) (holding that a victim's immediate comments to officers on the scene were not initiated by police and therefore not testimonial), *aff'd per curiam*, —— N.C. ——, 611 S.E.2d —— (2005).

Here Ms. Crawford's statements to police were highly dependent upon her ability to recall the crime clearly, and the photographic line-up is especially susceptible to being characterized, like the evidence at issue in *Crawford*, as having been "given in response to structured police questioning." *Crawford*, 541 U.S. at 53 n.4, 158 L. Ed. 2d at 194 n.4. The details provided by Ms. Carlson's statements are precisely those that would be probed and tested upon cross-examination. As such, we hold that the information obtained from the photo line-up and offered at trial through Officer Utley constituted testimonial evidence.

## C. The Effect of the Error

The trial court found and the State contends that these statements are reliable and thus admissible. The fact that the information provided may be quite reliable or trustworthy, however, is irrelevant under *Crawford*. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." *Crawford*, 541 U.S. at 62, 158 L. Ed. 2d at 199. "Admitting a statement deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* Moreover, Justice Scalia also noted in *Crawford* that "[t]he involvement of government officers in the production of testimonial evidence presents" a risk, and the Sixth Amendment's protections against testimonial hearsay primarily address that risk by controlling the use of certain types of evidence, including "interrogations by law enforcement officers." *Id.* at 53, 158 L. Ed. 2d at 194.

Because we hold that both Ms. Carlson's statement to the police and her identification of defendant in the photo line-up constitute testimonial evidence, we conclude that both were inadmissible unless the witness was unavailable and defendant had a proper opportunity to cross-examine. *Crawford*, 541 U.S. at 68-69, 158 L. Ed. 2d at 203; *Clark*, 165 N.C. App. at 284, 598 S.E.2d at 217-18. It is undisputed that Ms. Carlson was unavailable as a result of her untimely death before the start of the trial. Moreover, it is not disputed that defendant lacked a prior opportunity to cross-examine Ms. Carlson as to her statements.[1] Because defendant had no prior opportunity to cross-examine the witness, the use of her testimony at her trial constituted a violation of defendant's Sixth Amendment rights.

When such a violation occurs, we grant a new trial unless the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2003). "In order for this Court to find that the error affecting defendant's constitutional rights was harmless beyond a reasonable doubt, we must determine that the error had no bearing on the jury deliberations." *State v. Sisk*, 123 N.C. App. 361, 370, 473 S.E.2d 348, 354 (1996), *aff'd in relevant part and disc. review allowed*, 345 N.C. 749, 483 S.E.2d 440 (1997) (citing N.C. Gen. Stat. § 15A-1443); *see also, Clark*, 165 N.C. App. at 289, 598 S.E.2d at 220-21.

---

1. It is, of course, irrelevant that defendant could cross-examine the officers who introduced Ms. Carlson's statements. *See Crawford*, 541 U.S. at 50-51, 158 L. Ed. 2d at 192.

In *Clark*, this Court found the evidence to be harmless beyond a reasonable doubt because there was other substantial evidence upon which the jury could have based its verdict, including evidence given by the victim herself. *Clark*, 165 N.C. App. at 290, 598 S.E.2d at 221. In the case *sub judice*, however, we cannot conclude that the error was harmless beyond a reasonable doubt. Once the evidence offered by Ms. Crawford is excluded, there is no eye-witness testimony available giving an account of the crime nor is there anyone who can place defendant with Ms. Carlson during the time of its commission. There is no forensic evidence such as fingerprints, hairs, or fibers placing defendant at the scene or otherwise implicating defendant. Furthermore, defendant never confessed to the crime. The most the State may offer is that Woods saw defendant enter the apartment building on the day in question, that defendant had been seen on the premises begging for money on previous occasions, and that defendant was less than cooperative when questioned about the crime.

The remaining evidence is not sufficient for us to conclude that excluding the victim's identification of defendant and her other testimony would have no bearing on jury deliberations. *Cf. State v. Roope*, 130 N.C. App. 356, 367, 503 S.E.2d 118, 126, *disc. review denied*, 349 N.C. 374, 525 S.E.2d 189-90 (1998) (holding that overwhelming evidence of guilt may render constitutional error harmless beyond a reasonable doubt). Indeed, the hearsay evidence presented by the State constituted the core of the case against defendant. As such, this erroneous admission of evidence is not harmless beyond a reasonable doubt as required by N.C. Gen. Stat. § 15A-1443(b).

### III.

Because Ms. Carlson's statement to the police and her identification of defendant in the photo line-up constitute testimonial evidence, defendant's rights under the Sixth Amendment's Confrontation Clause were violated when the victim's death removed any possibility that defendant could cross-examine Ms. Carlson. Given the nature of the evidence at trial, we cannot hold that this error was harmless beyond a reasonable doubt. Accordingly, we grant defendant a new trial.

We note that in light of *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004), defendant has filed a Motion for Appropriate Relief as to the sentence imposed by the trial court. Because, however, we grant defendant a new trial, the motion is moot.

New Trial.

Judges McCULLOUGH and BRYANT concur.