STATE v. MOORE

[173 N.C. App. 494 (2005)]

———————

STATE OF NORTH CAROLINA v. JACK PHILLIP MOORE

No. COA04-642

(Filed 4 October 2005)

**1. Constitutional Law— right to confrontation—prior sexual assault—testimonial evidence—photo lineup—harmless error**

Although the trial court violated defendant's right to confrontation in a double second-degree rape, first-degree kidnapping, possession of cocaine, possession of drug paraphernalia, and habitual misdemeanor assault case by allowing the admission of evidence regarding an alleged prior sexual assault obtained from a detective's testimony that a prior victim identified defendant as her assailant when the prior victim was unavailable at trial, it was harmless error beyond a reasonable doubt because: (1) the victim in this case provided sufficient detail of her rape and identified defendant as her attacker; and (2) the sexual assaults upon two prior victims were properly admitted to show defendant's modus operandi, common plan or scheme, intent, and knowledge.

**2. Evidence— prior crimes or bad acts—sexual assaults—modus operandi—common plan or scheme—intent—knowledge**

The trial court in a prosecution for second-degree rape, kidnapping and other offenses properly admitted evidence of two alleged prior sexual assaults by defendant under N.C.G.S. § 8C-1,

Rules 403 and 404 for the purpose of showing defendant's modus operandi, common plan or scheme, intent and knowledge because: (1) in regard to the similarity of this case to one of the prior victims, in both cases defendant initiated contact with a woman whom he had known for several years; both women had substance abuse problems and defendant told both of them that he had drugs they could use; in both cases defendant struggled with the women once they arrived at their destinations, he removed their clothes, he placed at least one of his hands on their neck, and he engaged in sexual intercourse; both women indicated they did not believe defendant would harm them prior to their attacks since they had known defendant for several years, they were friends, and he had treated them nicely; and a time disparity of seventeen months is not too remote for Rule 404(b) purposes; and (2) in regard to the similarity of this case with another prior victim, although a rape had not occurred at the time the police arrived, the evidence parallels what happened to the victim in this case earlier in the same evening.

**3. Evidence— pornographic magazines—criminal citation— harmless error**

The trial cout committed harmless error in a double second-degree rape, first-degree kidnapping, possession of cocaine, possession of drug paraphernalia, and habitual misdemeanor assault case by admitting an officer's testimony regarding pornographic magazines and a criminal citation found in defendant's motel room, because: (1) although the pornographic magazines could be considered prejudicial, a different outcome would not have resulted if these magazines had not been presented to the jury; and (2) although the citation indicated defendant illegally possessed a crack pipe and a half ounce of marijuana which was irrelevant to the issues in this case, the State could prove beyond a reasonable doubt that defendant raped the victim based upon her testimony alone which was also supported by the N.C.G.S. § 8C-1, Rule 404(b) evidence demonstrating defendant's modus operandi, common plan or scheme, intent, and knowledge.

**4. Sentencing— remand—erroneous use of rape conviction to elevate kidnapping charge**

Although defendant neither objected to the sentence he received nor raised his two constitutional arguments in the trial court in a double second-degree rape, first-degree kidnapping, possession of cocaine, possession of drug paraphernalia, and

**STATE v. MOORE**

[173 N.C. App. 494 (2005)]

habitual misdemeanor assault case, the Court of Appeals used its inherent authority under N.C. R. App. P. 2 and remanded the case to the trial court for resentencing, because: (1) the State conceded that one of defendant's rape convictions was erroneously utilized to elevate second-degree kidnapping to first-. degree kidnapping; and (2) the State acknowledged that this dual use of one of defendant's rapes of the victim is restricted by *State v. Stinson*, 127 N.C. App. 252 (1997).

Appeal by defendant from judgments entered 8 August 2003 by Judge Zoro J. Guice in Buncombe County Superior Court. Heard in the Court of Appeals 2 March 2005.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Amar Majmundar, for the State.*

*Eric A. Bach for defendant-appellant.*

HUNTER, Judge.

Jack P. Moore ("defendant") presents the following issues for our consideration: Did the trial court erroneously allow the State to offer (I) statements from a previous rape accuser through the hearsay testimony of a police officer and emergency room physician in violation of the Sixth Amendment of the United States Constitution as interpreted by *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004); (II) evidence of three additional sexual encounters between defendant and other women pursuant to Rules 401, 403, and 404 of the North Carolina Rules of Evidence; and (III) testimony regarding pornographic magazines and a criminal citation as it was inadmissible under Rule 401 and 403. Defendant also presents two constitutional issues for consideration: Did the trial court violate his constitutional rights by (I) sentencing defendant to consecutive sentences on two counts of second degree rape and one charge of habitual misdemeanor assault when the assault indictment charged the same conduct alleged in the rape indictments; and (II) sentencing defendant to consecutive sentences for second degree rape and first degree kidnapping when the kidnapping offense was elevated to the first degree with the same sexual assault allegation contained in the rape indictment. After careful review, we find no prejudicial error occurred in the trial below, but remand for resentencing as to first degree kidnapping.

**STATE v. MOORE**

[173 N.C. App. 494 (2005)]

The evidence tends to indicate that on 23 October 2002, L.S. was in Asheville, North Carolina, in an area near the Interstate Motel looking for marijuana. She saw defendant, with whom she had been acquainted for over twenty years, on the street. During her conversation with defendant, she told him she was looking for marijuana. Defendant told her he had some marijuana in his motel room and that he would sell it to her for $10.00. L.S. walked with defendant to his motel room at the Interstate Motel.

Upon entering the motel room, defendant went into the bathroom. After defendant exited the bathroom, defendant grabbed L.S., threw her down on a bed, and began removing her clothes. L.S. asked defendant to stop, but he continued. Defendant raped L.S. He then allowed L.S. to wash and dress, but before L.S. could leave the room, he forced her onto a bed and raped her again. After the second rape, L.S. left the room and subsequently called the police.

Meanwhile, defendant saw M.O., a woman with whom he had been acquainted for several years, in the Interstate Motel. During his conversation with M.O., M.O. informed him she was looking for some alcohol to drink. Defendant invited M.O. to his room for a drink. Upon entering the room, he grabbed M.O., threw her onto a bed, and began removing her clothes. He held M.O. by her neck while he removed his pants. Before he could penetrate M.O., the police knocked on his door and defendant jumped up. M.O. answered the door, put her clothes on, and left the motel room.

Defendant was subsequently indicted on two counts of second degree rape, and one count of first degree kidnapping, possession of cocaine, possession of drug paraphernalia, habitual misdemeanor assault, and for being an habitual felon. Defendant was convicted of all charges and was sentenced to two consecutive sentences of 133-169 months for each rape conviction, 133-169 months for kidnapping to run concurrently to the rape convictions, 133-169 months for possession of cocaine to run consecutively after the kidnapping sentence, and 133-169 months for habitual misdemeanor assault to run consecutively after the possession of cocaine sentence. Defendant appeals.

[1] We first address defendant's contention that the trial court erroneously allowed the admission of evidence regarding an alleged prior sexual assault in violation of the Confrontation Clause to the United States Constitution. Specifically, defendant challenges the admission of statements made by T.M., an alleged prior victim, to a police detec-

tive and a medical doctor regarding her rape. Prior to defendant's trial in this case, T.M. died and was therefore unavailable to testify at defendant's trial.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "Our review of whether defendant's Sixth Amendment right of confrontation was violated is three-fold: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004). In this case, it is undisputed that T.M. was unavailable at defendant's trial because she was deceased. It is also undisputed that defendant did not have a prior opportunity to cross-examine T.M. Thus, our analysis is limited to whether T.M.'s statements were testimonial in nature.

According to testimony, on 18 October 2000, T.M. reported to the police that she had been sexually assaulted. Detective Paula Barnes ("Detective Barnes") contacted T.M. at the hospital and interviewed her regarding the sexual assault. T.M. provided Detective Barnes with a description of the sexual assault and indicated a man by the name of Jimmy Jackson committed the assault. Dr. Stace Horine ("Dr. Horine") testified that he was an emergency room physician and that he treated T.M. on 18 October 2000 for an alleged rape. During the treatment, T.M. gave an account of the alleged rape. However, she did not name her assailant. Detective Barnes testified that there were several officers looking for the assailant that evening and that later in the evening, the police showed T.M. a photographic line-up of six individuals. After viewing the pictures, T.M. identified defendant as the person who assaulted her.

Defendant argues the admission of Detective Barnes's and Dr. Horine's testimony regarding statements made by T.M. violated his Sixth Amendment right to confrontation because T.M.'s statements were testimonial in nature. In their appellate briefs, the parties discuss at length whether statements made to a medical doctor are testimonial in nature, and they also present argument regarding the statements made to Detective Barnes. It is unnecessary for this Court to resolve these issues because T.M. did not name her assailant in those statements. Rather, the police utilized T.M.'s statements in their investigation and eventually presented T.M. with a photographic line-

up from which she identified defendant. This Court has held that "the information obtained from [a] photo line-up and offered at trial through [a police officer is] testimonial evidence." *State v. Lewis*, 166 N.C. App. 596, 602, 603 S.E.2d 559, 563 (2004). Thus, Detective Barnes's testimony that T.M. identified defendant as her assailant was inadmissible under the Sixth Amendment to the United States Constitution because T.M. was unavailable at trial and defendant did not have a prior opportunity to cross-examine.

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2003). In light of the other evidence in this case, we conclude the constitutional error was harmless beyond a reasonable doubt. Indeed, L.S. provided sufficient detail of her rape and identified defendant as her attacker. Also, as explained below, the sexual assaults upon M.O. and S.J., prior victims of defendant, were properly admitted to show defendant's *modus operandi*, common plan or scheme, intent, and knowledge. The jury could conclude beyond a reasonable doubt from this evidence that defendant committed the charged offenses.

**[2]** Next, we address defendant's contentions that the trial court erroneously admitted evidence under Rules 403 and 404 of two alleged prior sexual assaults of S.J. and M.O. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

*Id.* Rule 404(b) is one of inclusion. *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

> "Where [prior bad act] evidence reasonably tends to prove a material fact in issue in the crime charged, it will not be rejected merely because it incidentally proves the defendant guilty of another crime," but [it will be rejected] if the sole logical relevancy of that evidence is to suggest defendant's predisposition to commit the type of offense with which he is presently charged.

*State v. Jeter*, 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990) (quoting *State v. Johnson*, 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1986)). Whether evidence is admissible under Rule 404(b) "is constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002).

> "When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor."

*State v. Bidgood*, 144 N.C. App. 267, 271-72, 550 S.E.2d 198, 201 (2001) (citation omitted).

Although evidence may be admissible under Rule 404(b), the probative value of the evidence must still outweigh the danger of undue prejudice to the defendant to be admissible under Rule 403. *State v. Frazier*, 319 N.C. 388, 390, 354 S.E.2d 475, 477 (1987). This issue is a "matter within the sound discretion of the trial judge." *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). "That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *Bidgood*, 144 N.C. App. at 272, 550 S.E.2d at 202. We note, however, that our Supreme Court has stated that " '[t]he dangerous tendency of this class of evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subjected to strict scrutiny by the courts.' " *Jeter*, 326 N.C. at 458, 389 S.E.2d at 806 (quoting *Johnson*, 317 N.C. at 430, 347 S.E.2d at 15).

Our Courts have been very liberal in permitting the State to present evidence to prove any relevant fact not prohibited by Rule 404(b) with respect to prior sexual offenses. *See State v. White*, 331 N.C. 604, 612, 419 S.E.2d 557, 561 (1992). "This is particularly true where the fact sought to be proved is the defendant's intent to commit a similar sexual offense for which the defendant has been charged." *Id.* at 612, 419 S.E.2d at 561-62.

### Assault Upon S.J.

S.J. testified that on 6 June 2001, defendant approached her outside of the ABCCM Shelter in Asheville, North Carolina. Defendant asked to borrow her lighter so he could smoke some crack cocaine.

She agreed to let defendant borrow her lighter and they proceeded to go into the woods. S.J. testified that she had been a drug addict for several years and that crack addicts would normally go into the woods to smoke crack. However, this time defendant wanted to go deeper into the woods, and this was out of the ordinary. They walked deeper into the woods and arrived at an area where a mattress and dresser were located. Upon arriving at this area, defendant and S.J. began to fight and defendant was able to force S.J. onto the ground. Defendant grabbed her throat, threatened to kill her, removed her underwear and had sexual intercourse with S.J., even though S.J. had asked defendant repeatedly to stop. Afterwards, S.J. was able to leave the woods, and she reported the incident to the police.

The trial court admitted this testimony under Rule 404(b) on the basis that it tended to show identity, the necessary intent, defendant's knowledge, absence of mistake or accident, and a common plan or scheme. The State argues this evidence was admissible because it demonstrates defendant's common plan or scheme and intent to rape drug addicts by luring them to a secluded area. Defendant argues, however, that the alleged rape of S.J. is dissimilar from the present offense for the following reason: S.J. was allegedly lured away from others in order to commit the rape, but in the present case, L.S. voluntarily entered defendant's hotel room.

We conclude the circumstances of S.J.'s rape and the present offense are sufficiently similar for Rule 404(b) purposes. In both cases, defendant initiated contact with a woman whom he had known for several years. Both of these women had substance abuse problems. During defendant's conversations with these women, he told them he had drugs they could use. In S.J.'s case, defendant asked the victim to go deep into the woods with him in order to smoke crack cocaine. In the present case, defendant asked the victim to come to his motel room so she could purchase marijuana. In both cases, once defendant and the women arrived at their destinations, defendant struggled with the women, removed their clothes, placed at least one of his hands on their neck, and engaged in sexual intercourse. Both women also indicated that prior to their attacks, they did not believe defendant would harm them because they had known defendant for several years, were friends, and he had treated them nicely.

We conclude these two incidents were sufficiently similar for Rule 404(b) purposes. The fact that one of the incidents occurred in a motel room and the other in the woods does not change our analysis. Indeed, in both cases, defendant lured an acquaintance to

a location where they would be alone in order to either use or purchase drugs. Once they were alone, defendant engaged in sexual intercourse with the women, against their will, and placed his hand on their necks during the encounter. This evidence was admissible to show *modus operandi*, common plan or scheme, intent, and knowledge.

Defendant also argues the sexual assault upon S.J. should not have been admitted because of the time disparity between S.J.'s incident and the present offense.

> Evidence of other crimes must be connected by point of time and circumstance. Through this commonality, proof of one act may reasonably prove a second. However, the passage of time between the commission of the two acts slowly erodes the commonality between them. The probability of an ongoing plan or scheme then becomes tenuous. Admission of other crimes at that point allows the jury to convict defendant because of the kind of person he is, rather than because the evidence discloses, beyond a reasonable doubt, that he committed the offense charged.

*State v. Jones*, 322 N.C. 585, 590, 369 S.E.2d 822, 824 (1988). In this case, L.S.'s rape occurred on 23 October 2002 and S.J.'s rape occurred on 6 June 2001, approximately a seventeen-month difference. We conclude that seventeen months is not too remote for Rule 404(b) purposes. *See State v. Frazier*, 344 N.C. 611, 615-16, 476 S.E.2d 297, 300 (1996) (describing instances in which the court has admitted under Rule 404(b) prior instances of similar sexual misbehavior that had a time lapse of more than two years, including a ten year disparity).

### Assault upon M.O.

On 23 October 2002, after L.S. reported an alleged sexual assault upon her, the police went to defendant's motel room. M.O. answered the door and was wearing only a t-shirt. Defendant was standing between the two beds in the room and did not have on any clothes.

M.O. testified that she was a drug addict and an alcoholic. She also testified that she had known defendant for five or six years and that they would smoke crack together in the woods. On 23 October 2002, M.O. testified she went to the Interstate Motel in Asheville in order to drink alcohol after a fight with her boyfriend. After she could not locate her friend, she saw defendant. Defendant asked her why she was at the motel and she told him she was looking for something

**STATE v. MOORE**

[173 N.C. App. 494 (2005)]

to drink. Defendant told her he had something to drink and invited her to his room. She indicated that she felt comfortable going to his room because she had known defendant for years and did not believe he would hurt her. Upon entering the room, M.O. testified defendant threw her down on a bed and began ripping her clothes off. Defendant was choking her as he removed her clothes, and then defendant held her down as he was removing his pants. During this time, M.O. was trying to fight back and was asking defendant to stop. Then, there was a knock at the door and someone said, "[p]olice." The defendant jumped up and M.O. answered the door.

Defendant challenges the admission of M.O.'s testimony regarding what occurred in his motel room because defendant had not committed a crime at the time the police knocked on the door. Specifically, defendant argues this Court must distinguish between criminal and non-criminal conduct. Defendant argues that the encounter between M.O. and defendant may offend common decency in that it involved a man luring a woman into his room under false pretenses and being sexually aggressive towards her, but it was not a bad act for Rule 404(b) purposes.

Although a rape had not occurred at the time the police arrived, M.O. testified that defendant invited her to his room to consume alcohol. Once in the room, defendant threw her down on the bed, began ripping her clothes off, was choking her, and he was removing his pants with his free hand. During this encounter, M.O. was fighting back at defendant. This evidence not only describes an assault and battery, but it also parallels what happened to L.S. earlier that evening. Thus, it shows defendant's *modus operandi*, common plan or scheme, intent, and knowledge.

[3] Next, defendant challenges the admission of Officer Darryl Fisher's testimony regarding pornographic magazines and a criminal citation found in defendant's motel room. "Evidence of [a] defendant's mere possession of pornographic materials does not tend 'to make the existence of any fact that is of consequence to the determination of the action more [probable] or less probable than it would be without the evidence.' " *State v. Smith*, 152 N.C. App. 514, 522, 568 S.E.2d 289, 294 (2002) (quoting N.C. Gen. Stat. § 8C-1, Rule 401). "[W]ithout any evidence that [a] defendant had viewed the pornographic materials with the victim, or any evidence that defendant had asked the victim to look at pornographic materials," the pornographic material is "not relevant to proving [a] defendant committed the alleged [sexual] offenses" and should not be admitted by the trial

court. *Id.* at 523, 568 S.E.2d at 295. In this case, the State argues the pornographic material was admissible to show defendant's control and dominion over the motel room. However, there was no testimony that defendant's name, address, or fingerprints were on the magazines. Furthermore, defendant's control and dominion over the motel room was not at issue in this case. Even if defendant's control of the room was at issue, the fact that defendant was discovered completely naked in the room by the police, possessed the room key, and signed a consent to search form which allowed the police to search the motel room demonstrates his dominion and control over the room. Accordingly, the pornographic magazines were erroneously admitted by the trial court into evidence.

However, the erroneous admission of these magazines into evidence was harmless error. Although the pornographic magazines could be considered prejudicial, we conclude a different outcome would not have resulted if these magazines had not been presented to the jury. Indeed, L.S. described her attack and identified defendant as the rapist. The State also presented evidence of similar sexual assaults committed by defendant.

Defendant also argues the admission of a criminal citation was erroneous because it was irrelevant under Rule 401 and highly prejudicial under Rule 403. The criminal citation issued on 21 October 2002 indicated defendant illegally possessed a crack pipe and a half ounce of marijuana. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *State v. Coen*, 78 N.C. App. 778, 780, 338 S.E.2d 784, 786 (1986) (quoting N.C. Gen. Stat. § 8C-1, Rule 401). In this case, the fact that defendant possessed a crack pipe and a half ounce of marijuana two days earlier does not have any tendency to prove any of the relevant issues in this case. Indeed, the State had to prove beyond a reasonable doubt that defendant raped L.S. The relevant evidence indicated defendant and L.S. had known each other for approximately twenty years. Defendant used this relationship to lure L.S. to his motel room under the false pretense of selling her some marijuana. Defendant raped L.S. after she entered his motel room. Whether defendant actually possessed marijuana or a crack pipe is irrelevant.

However, "[t]he admission of irrelevant evidence is generally considered harmless error." *State v. Melvin*, 86 N.C. App. 291, 297, 357 S.E.2d 379, 383 (1987). "The defendant has the burden of showing he

was prejudiced by the admission of the evidence." *Id.*; *see also* N.C. Gen. Stat. § 15A-1443. We conclude the admission of the criminal citation was harmless error. As previously discussed, the State could prove beyond a reasonable doubt that defendant raped L.S. based upon her testimony alone, which was supported by the Rule 404(b) evidence that demonstrated defendant's *modus operandi*, common plan or scheme, intent, and knowledge.

**[4]** Finally, defendant raises several constitutional arguments regarding his sentences for second degree rape, habitual misdemeanor assault, and first degree kidnapping. Specifically, defendant argues the trial court violated his constitutional rights by (I) sentencing him to consecutive sentences on two counts of second degree rape and one charge of habitual misdemeanor assault when the assault indictment charged the same conduct alleged in the rape indictments; and (II) sentencing defendant to consecutive sentences for second degree rape and first degree kidnapping when the kidnapping offense was elevated to the first degree with the same sexual assault allegation contained in the rape indictment.

Defendant neither objected to the sentence he received nor raised these arguments below. Pursuant to our Supreme Court's decision in *State v. Fernandez*, 346 N.C. 1, 18, 484 S.E.2d 350, 361 (1997), we conclude these issues are not properly preserved for appellate review. *See id.* (stating a similar argument was not properly preserved for appellate review because the defendant did not raise the issue in the trial court).

However, we note that the State has conceded that one of defendant's rape convictions was erroneously utilized to elevate second degree kidnapping to first degree kidnapping. The State acknowledges that "this dual use of one of defendant's rapes of [L.S.] is restricted by *State v. Stinson*, 127 N.C. App. 252, 489 S.E.2d 182 (1997)[.]" Therefore, pursuant to this Court's inherent authority under N.C.R. App. P. 2, we remand this case to the trial court for resentencing. Under Rule 2:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

*Id.* We conclude an exercise of this Court's inherent authority under Rule 2 is necessary to prevent a manifest injustice.[1] *See State v. Dudley,* 319 N.C. 656, 659, 356 S.E.2d 361, 364 (1987) (indicating that although a defendant had not preserved constitutional issues for appellate review, our Supreme Court invoked Rule 2 and addressed the issues to foreclose manifest injustice).

In sum, we conclude defendant received a trial free of prejudicial error. Although the trial court erroneously admitted evidence of a prior rape of T.M., evidence of pornographic magazines and a criminal citation, a different result would not have resulted absent this evidence. Indeed, L.S. described her rape in sufficient detail and identified defendant as the rapist. The State also provided evidence of defendant's *modus operandi,* common scheme or plan, intent, and knowledge by admitting evidence of two other sexual assaults allegedly committed by defendant.

No prejudicial error. Remanded for resentencing.

Judges CALABRIA and JACKSON concur.

---

1. We note that defendant may raise the remaining sentencing issue in a motion for appropriate relief pursuant to N.C. Gen. Stat. § 15A-1415(b)(8) (2003).