STATE v. BARNETT

[223 N.C. App. 450 (2012)]

———————————————

STATE OF NORTH CAROLINA v. WILLIAM RONNIE BARNETT

No. COA12-381

(Filed 20 November 2012)

## 1. Evidence—prior crimes or bad acts—testimony—common scheme

The trial court did not err in a second-degree rape case by admitting testimony regarding defendant's prior bad acts under N.C.G.S § 8C-1, Rules 404(b) and 403 as part of a common scheme. Assuming *arguendo* that it was error to admit the testimony of T.I. and C.M., any error was harmless in light of T.L.'s properly admitted testimony. Further, the probative value of the prior incidents with T.L. outweighed any unfair prejudice to defendant.

**2. Evidence—cross-examination elicited substantially similar evidence—no plain error**

The trial court did not commit plain error in a second-degree rape case by allowing a witness to testify that she bought a shotgun and was going to shoot defendant. There is no prejudice to the defendant when cross-examination elicits testimony substantially similar to the evidence challenged.

**3. Sentencing—no written findings—remanded for clerical error**

Although the trial court did not err in a second-degree rape case by not making written findings in imposing a prison term greater than the presumptive sentence, the case was remanded for correction of a clerical error since the trial court found an aggravating factor but the incorrect box was marked on the judgment.

**4. Appeal and Error—preservation of issues—failure to argue—failure to cite authority**

The trial court did not err in a second-degree rape case by allowing T.I. and C.M. to give victim impact testimony. As defendant only cursorily argued that he was denied due process and cited no authority in support of his argument, the Court of Appeals declined to address that portion of his argument. N.C. R. App. P. 28(b)(6).

Appeal by Defendant from judgment entered 29 July 2011 by Judge Anna Mills Wagoner in Iredell County Superior Court. Heard in the Court of Appeals 11 September 2012.

*Attorney General Roy Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Paul M. Green, for Defendant.*

BEASLEY, Judge.

Defendant appeals from his conviction of second-degree rape in violation of N.C. Gen. Stat. § 14-27.3(a). For the reasons stated below, we find no error in part and remand for correction of a clerical error in part.

The events giving rise to the charged offense in this case occurred twenty-seven years ago in 1985. The prosecuting witness, T.L.,[1] was born on 17 July 1969. Defendant, born in 1959, is her uncle.

Defendant filed a motion *in limine* to exclude testimony by T.L. and T.I., Defendant's daughter, under Rules 404 and 403 of the North Carolina Rules of Evidence. During a *voir dire* hearing on 25 July 2011, T.L., T.I., and C.M., a niece of Defendant and cousin of T.L. and T.I., testified to Defendant's prior sexual acts with them. The trial court found a "strikingly similar pattern" of sexual abuse and admitted the evidence to show motive, common plan, or opportunity. The trial court further found that the evidence was more probative than prejudicial and admitted the evidence subject to a limiting instruction. Defendant renewed his objection prior to each witness's testimony and each objection was overruled. The trial court gave limiting instructions as to the purposes for which the testimonies were offered at the conclusion of each witness's testimony.

At trial, T.L. testified that in late July or early August of 1985 she and her parents traveled from their home in West Virginia to visit her grandparents in Mooresville, North Carolina. At that time, Defendant lived with his wife, Nancy, in a trailer close to his parents' (T.L.'s grandparents') house. T.L., then sixteen years old, and her cousin Gary visited Defendant and Nancy at the trailer. On the way to the trailer, Defendant, Nancy, Gary, and T.L. went to the store and purchased fortified wine and some beer. Defendant, Nancy, Gary, and T.L. played cards, drank alcohol, and smoked marijuana at the trailer. T.L. drank an entire bottle of wine over the course of a couple of hours. T.L. was warm, so Defendant told Nancy to give T.L. a pair of her shorts to wear. After putting on the shorts, T.L. mentioned she had a headache. Nancy gave her a yellow pill to help her headache. T.L. swallowed the pill in the kitchen. After taking the pill, T.L. felt "dizzy," "woozy," and "sleepy." The last thing T.L. remembered was taking another shot of wine. When T.L. awoke, she was in Defendant's bed. T.L. was no longer wearing Nancy's shorts. Defendant was on top of her, vaginally penetrating T.L. with his penis. Nancy was also in the room. T.L. told Defendant to stop, tried to push Defendant off, and begged Nancy to help her. T.L. remembered nothing between taking the shot in the kitchen and waking up in the bedroom.

T.L. recounted Defendant's prior sexual contact with her. In 1977, Defendant touched T.L.'s breasts on several occasions at her grand-

---

1. We will use initials to protect the identities of the witnesses in this case.

parents' swimming hole. She testified that these encounters always occurred at her grandparents' house. Defendant would send the others away so that he and T.L. were alone when he touched her. On more than one occasion in 1978, Defendant touched her breasts, put her hand on his penis, and made her rub his penis up and down. These incidents ended when T.L. was about ten years old and her grandparents and Defendant moved to North Carolina.

In 1980, Defendant also masturbated in front of T.L. on two occasions. T.L. and her parents were unable to visit her grandparents for about three years due to financial troubles. T.L. visited her grandparents' house again when she was fifteen years old, but no incidents occurred during that visit.

T.I. was born on 21 March 1979. T.I.'s mother, Julie Barnett (Julie), was married to Defendant. After her parents separated, T.I. lived primarily with her mother but visited Defendant at her grandparents' house where Defendant lived. When she was three years old, Defendant digitally penetrated her genitals while bathing her. When she was four years old, Defendant masturbated in front of her in his bedroom. Defendant asked T.I. several times to touch him.

T.I.'s mother, Julie, also testified. Upon learning that Defendant had molested T.I., Julie called the police and the hospital. Julie received no help from the police or hospital. Julie then purchased a shotgun and shells. On direct examination, Julie stated without objection that she called Defendant's father and told him to tell Defendant to come over to her house. Julie told Defendant's father that she was going to kill him "because he messed with [her] baby." Julie repeated this testimony on cross-examination.

C.M.'s testimony demonstrated a lengthy history of sexual abuse by Defendant. C.M. was born 21 August 1966 and grew up in West Virginia. Defendant lived with his parents, C.M.'s grandparents, ten miles away. C.M. often visited her grandparents' house with her sister and brothers. When C.M. was four or five years old, Defendant had sexual intercourse with her twice on a bookcase in his bedroom and in the swimming hole. When C.M. was six or seven years old, Defendant had sexual intercourse with her in an old schoolhouse on her grandparents' property. Defendant showed C.M. sex positions from pornographic magazines and instructed her to imitate the pictures. When C.M. was eight or nine years old, Defendant had sexual intercourse with her at her parents' house. During several of these occasions, Defendant had sexual intercourse with C.M. and

Defendant would send her brothers out of the room to perform these sexual acts. Defendant had sexual intercourse with C.M. many times after that and did not stop until C.M. was eleven years old and began having her menstrual period.

The jury convicted Defendant of second-degree rape on 29 July 2011. Defendant stipulated to his prior conviction for DWI in 2003. The State offered the conviction as an aggravating factor. Defendant presented no evidence of mitigating factors. T.L., T.I., and C.M. gave victim impact testimony. Prior to T.I. and C.M. speaking before the court, the prosecutor stated, "I'm sure that the other ladies may want to be heard; but for purposes of sentencing on the second degree rape, your Honor, that's my offer, [T.L.]. I'll leave it up to your Honor." The prosecutor later asked the trial court to "take into consideration what [Defendant] has done to the lives of these women, and the lives of the women that you haven't heard from." Stating that it only considered the prior conviction, the trial court sentenced Defendant to thirty years in prison under the Fair Sentencing Act. The trial court made no written findings of fact. On the judgment, the clerk marked box "(a)" indicating that no written findings were made because the prison term imposed did not require such findings. Defendant now appeals his conviction and sentence.

[1] Defendant argues that the trial court erred in admitting testimony regarding Defendant's prior bad acts under Rules 404(b) and 403. We find no error with regard to the admission of prior bad acts with T.L. as part of a common scheme. Assuming *arguendo* that it was error to admit the testimony of T.I. and C.M., any error was harmless in light of T.L.'s properly admitted testimony.

The Supreme Court North Carolina recently clarified the standard of review for admission of evidence under Rules 404(b) and 403.

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, ___ N.C. ___, ___, 726 S.E.2d 156, 159 (2012).

In general, evidence of prior bad acts may not be used to show a defendant's propensity to commit the charged offense. *See* N.C. Gen.

Stat. § 8C-1, Rule 404(b) (2011). North Carolina courts have generally been very liberal in admitting evidence of similar sex offenses under Rule 404(b), *see State v. McCarty*, 326 N.C. 782, 785, 392 S.E.2d 359, 361 (1990), especially under the common plan or scheme exception, *see State v. Gordon*, 316 N.C. 497, 504, 342 S.E.2d 509, 513 (1986). This state's courts are also "quite liberal" in admitting similar, prior sex offenses when both the prior offenses and the charged offense involve the same victim. *State v. Thompson*, 139 N.C. App. 299, 303, 533 S.E.2d 834, 838 (2000).

"Though it is a rule of inclusion, Rule 404(b) is still 'constrained by the requirements of similarity and temporal proximity.'" *Beckelheimer*, ___ N.C. at ___, 726 S.E.2d at 159 (quoting *State v. Al–Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002)). A prior act or crime is considered "similar" under Rule 404(b) "if there are some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both." *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991)(citations omitted)(internal quotation marks omitted). "[R]emoteness in time tends to diminish the probative value of the evidence and enhance its tendency to prejudice." *State v. Artis*, 325 N.C. 278, 300, 384 S.E.2d 470, 482 (1989), *vacated and remanded on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Temporal proximity is not eroded when the remoteness in time can be reasonably explained. *See State v. Jacob*, 113 N.C. App. 605, 611-12, 439 S.E.2d 812, 815-16 (1994)(lack of access to preferred victim); *State v. Davis*, 101 N.C. App. 12, 398 S.E.2d 645 (1990)(incarceration).

When the prior bad acts occur in the same place as the charged offense, our courts have found the prior acts to be similar to the charged offense. *See State v. Boyd*, 321 N.C. 574, 577-78, 364 S.E.2d at 120 (1988); *State v. Thaggard*, 168 N.C. App. 263, 271, 608 S.E.2d 774 (2005). When there are still other similarities, prior incidents and the charged offense are not dissimilar even though the charged offense occurred in private and the prior incidents occurred in plain view. *State v. Khouri*, ___ N.C. App. ___, ___, 716 S.E.2d 1, 8 (2011).

In this case, we hold that the prior acts with T.L. are sufficiently similar to the charged offense. T.L.'s testimony shows a progression from inappropriate touching in 1977 to sexual intercourse in 1985. These assaults occurred where Defendant was living at the time, either his parents' house in North Carolina or the trailer he shared with his then-wife. Though the prior incident in the bedroom window occurred in plain view while S.M. was present, it is not too dissimilar

from the charged offense that is alleged to have occurred in the relative privacy of the bedroom in Nancy's presence.

The prior offenses and the charged offense are also not too remote. Though it appears that there is a five-year gap between the instances when T.L. was eleven years old and the charged incident when T.L. was sixteen years old, T.L.'s testimony provides a reasonable explanation for three years of the gap financial difficulties. Given this reasonable explanation, the lapse is therefore only two years. *See Jacob*, 113 N.C. App. at 611-12, 439 S.E.2d at 815-16 (ignoring the years in which defendant did not have access to preferred type of victim in analyzing temporal proximity). There is also a lapse of two years between when T.L. was nine years old and when T.L. was eleven years old. We do not find two lapses of two years each to warrant exclusion of T.L.'s testimony regarding prior incidents with Defendant. *See State v. Moore*, 173 N.C. App. 494, 502, 620 S.E.2d 1, 7 (2005)(holding that seventeen-month lapse was not significant); *see also State v. Frazier*, 344 N.C. 611, 615-16, 476 S.E.2d at 300 (1996) (citing cases holding lapses of seven years, ten years, and twenty years to be permissible). We hold that the trial court properly admitted T.L.'s testimony to show a common plan.

Evidence, though relevant, may still be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2011). When limiting instructions are given, this Court presumes that the jury follows such instructions. *State v. Brown*, ___ N.C. App. ___, ___, 710 S.E.2d 265, 273 (2011), *aff'd*, ___ N.C. ___, ___, 722 S.E.2d 508 (2012). Limiting instructions mitigate the danger of unfair prejudice to the defendant. *See Beckelheimer*, ___ N.C. at ___, 726 S.E.2d at 160.

Here, the probative value of the prior incidents with T.L. outweighs any unfair prejudice to Defendant. The trial court gave the jury a limiting instruction following T.L.'s testimony, and we assume that the jurors followed the instruction. The trial court did not abuse its discretion under Rule 403.

Turning to the testimonies of T.I. and C.M., their testimonies also show some similarities with the 1985 incident and a progression of sexual abuse. All three women are family members of Defendant. T.L., T.I., and C.M. were all prepubescent girls when Defendant began touching them. Defendant molested them at his home, except for the incident at C.M.'s parents' house. Though we acknowledge there are some differences between the charged offense and the prior bad acts

with T.I. and C.M., prior bad acts with T.I. and C.M. were similar for the purposes of Rule 404(b) and, if not, then any error due to their testimonies was harmless error.

"The test for prejudicial error is whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached at trial." *State v. Goodwin*, 186 N.C. App. 638, 644, 652 S.E.2d 36, 40 (2007) (internal quotation marks and citations omitted). A new trial will only be ordered if the defendant shows prejudicial error. *State v. Macon*, 346 N.C. 109, 117, 484 S.E.2d 538, 543 (1997).

Though Nancy's testimony generally denied T.L.'s version of events and there was no physical evidence from twenty-seven years ago to corroborate T.L.'s testimony, T.L.'s testimony showed a common scheme to molest her. The jury could have regarded Nancy's testimony as self-serving since T.L.'s testimony painted Nancy in an unflattering light. We cannot say that but for the admission of T.I.'s and C.M.'s testimonies that the jury would not have convicted Defendant; therefore, we find any error in admitting their testimonies harmless.

[2] Next, Defendant argues that it was plain error to allow Julie to testify that she bought a shotgun and was going to shoot Defendant. We find no error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 334 (2012)(internal quotation marks and citations omitted).

There is no prejudice to the defendant when cross-examination elicits testimony substantially similar to the evidence challenged. *State v. Eubanks*, 151 N.C. App. 499, 502, 565 S.E.2d 738, 741 (2002). We assumed without deciding that the witnesses' testimonies were inadmissible under Rule 404(b) but still found no prejudice since the defendant elicited similar testimony on cross-examination. *Id.*

In this case, the particular statements Defendant has selected from Julie's testimony that he argues were improper were elicited on direct examination without objection as well as on cross-

examination. We hold that Defendant was not prejudiced by this evidence, nor was it plain error.

**[3]** Defendant argues that the trial court erred by not making written findings in imposing a prison term greater than the presumptive sentence. Defendant also argues that the trial court improperly considered victim impact testimony from T.I. and C.M. who were not prosecuting witnesses and that he was denied due process. We find no legal error as to the lack of written findings for his sentence and remand the case for correction of a clerical error. We find no error in allowing T.I. and C.M. to give victim impact testimony. As Defendant only cursorily argues that he was denied due process and cites no authority in support of his argument, we decline to address that portion of his argument. N.C. R. App. P. 28(b)(6).

The State contends that Defendant failed to preserve the sentencing issue for appeal. No objection is necessary to preserve an issue for appellate review when the challenge is that "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law." N.C. Gen. Stat. § 15A-1446(d)(18) (2011). The Supreme Court has held that this statute does not conflict with a specific provision of Appellate Rule 10 and operates as a "rule or law" that deems a sentencing issue preserved for appellate review. *State v. Mumford*, 364 N.C. 394, 402-03, 699 S.E.2d 911, 917 (2010). We have jurisdiction to hear Defendant's sentencing argument.

Sentencing in this case is controlled by the Fair Sentencing Act since the rape occurred in 1985. *See State v. Lawrence*, 193 N.C. App. 220, 222, 667 S.E.2d 262, 263 (2008). Under the Fair Sentencing Act, " '[a] judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.' " *State v. Vaughters*, ___ N.C. App. ___, ___, 725 S.E.2d 17, 20 (2012)(quoting *State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962)).

> If the judge imposes a prison term for a felony that differs from the presumptive term . . ., the judge must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence. If he imposes a prison term that exceeds the presumptive term, he must find that the factors in aggravation outweigh the factors in mitigation . . . .

N.C. Gen. Stat. § 15A-1340.4(b) (1991)(repealed 1993). Failure to make written findings regarding the aggravating factors is reversible error, *State v. Ledford*, 315 N.C. 599, 625, 340 S.E.2d 309, 325 (1986), unless the trial transcript makes it clear that the error was merely clerical, *see State v. Gell*, 351 N.C. 192, 218, 524 S.E.2d 332, 349 (2000). No specific findings that the aggravating factors outweigh the mitigating factors are necessary when there is a single aggravating factor. *State v. Summerlin*, 98 N.C. App. 167, 177, 390 S.E.2d 358, 363 (1990)(citing *State v. Freeman*, 313 N.C. 539, 330 S.E.2d 465 (1985)). Twelve years was the presumptive sentence for second-degree rape, a Class D felony, under Fair Sentencing. N.C. Gen. Stat. §§ 14-27.3(b) (1991)(amended 1993), 15A-1340.4(f)(2) (1991)(repealed 1993).

The trial court in the instant case imposed a sentence of thirty years, well in excess of the presumptive term. Thus, written findings were required; however, we find no error based on the case law stated above.

The prosecutor moved the trial court to consider the conviction, to which Defendant stipulated, as an aggravating factor. The trial court stated that it could properly consider the conviction under the Fair Sentencing Act. Given this context, it is evident that the trial court found an aggravating factor but the incorrect box was marked on the judgment. Thus, we remand the case to correct the clerical error.

[4] We find no error in allowing T.I. and C.M. to give victim impact testimony because, even if it was error to allow victims other than the prosecuting witness to give victim impact testimony, Defendant has failed to show that the trial court in fact considered their testimonies in sentencing him.

"We presume that the trial court disregarded incompetent evidence unless there is affirmative evidence to the contrary." *State v. Flowers*, 100 N.C. App. 58, 61, 394 S.E.2d 296, 298 (1990). Defendant has not established affirmative evidence that the trial court considered their testimonies in deciding his sentence. Although the prosecutor urged the trial court to sentence Defendant based on the effect he had on all three women's lives, contradicting her prior offer of only T.L.'s testimony, the trial court made no mention of considering the other victims' testimonies in pronouncing the sentence. We find no error.

For the reasons stated above, we find no error in part and remand for correction of clerical error in part.

No error in part; Remanded in part for correction of clerical error.

Judges MCGEE and THIGPEN concur.