IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-814

Filed 19 March 2024

Pitt County, Nos. 20CRS052950-52

STATE OF NORTH CAROLINA

v.

AARON MICHAEL MCLAWHON

Appeal by Defendant from judgment entered 28 September 2022 by Judge Josephine K. Davis in Pitt County Superior Court. Heard in the Court of Appeals 6 March 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Narcisa Woods, for the State-Appellee.*
>
> *Reid Cater for Defendant-Appellant.*

COLLINS, Judge.

Defendant Aaron McLawhon appeals from judgment entered upon guilty verdicts of three counts of statutory sexual offense with a child by an adult, sexual act by a substitute parent or custodian, and indecent liberties with a child. Defendant argues that the trial court plainly erred by admitting a detective's testimony that she was unable to interview Defendant during her investigation. We find no plain error.

## I.    Background

Defendant and his wife were foster parents to J.P., born in 2012, and her younger sister, M.P., beginning in March 2018.[1] In August 2019, J.P. and M.P. moved in with their paternal grandmother ("Mimi"), who was in the process of adopting them. Mimi observed J.P. "laying on the loveseat and . . . fondling [herself]" in April 2020. Mimi took J.P. into the bedroom and asked whether anyone had ever touched her inappropriately; J.P. said that Defendant had touched her. Mimi reported the allegation to the Pitt County Department of Social Services ("DSS"); DSS reported the allegation to Detective Nikki Dolenti with the Pitt County Sheriff's Department on 17 April 2020.

A DSS social worker took J.P. in for a forensic evaluation on 6 May 2020 at the TEDI Bear Child Advocacy Center, which is "a place that helps the community to address issues of children . . . involved in allegations of maltreatment." During the forensic evaluation, J.P. "described in pretty good detail that [Defendant] put his hands in her private parts and that she was trying to stop it."

J.P. and M.P.'s maternal grandmother ("Mamu") came to visit in May 2020. Mamu is active "in an organization called . . . Bikers Against Child Abuse" and "happened to bring [her] uniform and on the back is a big black patch that says Bikers Against Child Abuse." J.P. asked Mamu about the organization; Mamu explained

---

[1] We use initials to protect the identities of the minor children. *See* N.C. R. App. P. 42.

that child abuse "can be when a child gets hit or verbally or emotionally get[s] abused by words and things[,]" but she also explained that "there is another type of abuse which is called sexual abuse." Mamu explained that sexual abuse occurs "when somebody touches you wrong like in your privates and you really don't like it." J.P. responded, "like me?" J.P. "did not tell [Mamu] right then and there," but Mamu told J.P. to let her know if she ever wanted to talk about what happened to her.

J.P. asked to speak privately with Mimi and Mamu on 24 May 2020. J.P. told them that Defendant "touch[ed] her private area with his fingers." J.P. stated that she and Defendant "were sitting there watching movies and . . . were under blankets[,]" and he touched her vagina "under [her] panties." J.P. also told them that Defendant "would take a shower and he would ask her to come in and take a shower with her and she was scared because she was afraid that he was going to get mad at her[.]" Furthermore, J.P. stated that "when [Defendant] was touching her and everything[,] she did it also because she didn't want [M.P.] to be touched." Later that afternoon, J.P. asked to speak with Mimi and Mamu again because she "ha[d] more to tell [them]." J.P. told them that Defendant "touched her with his tongue and with his hand and that it hurt really bad."

Detective Dolenti interviewed J.P. on 27 May 2020, and J.P. told her that Defendant had "licked her private" and drew a picture to "show [her] how they were laying on the bed."

Defendant was indicted for three counts of statutory sexual offense with a child by an adult, sexual act by a substitute parent or custodian, and indecent liberties with a child. The matter came on for trial on 26 September 2022. J.P. testified that Defendant touched the inside of her vagina with his hand in the living room on multiple occasions; that Defendant touched her vagina with his mouth while she was in his bedroom; and that she would shower with Defendant when he asked because she "was scared he would do something to [her]." The jury returned guilty verdicts on all charges. The trial court consolidated Defendant's convictions and sentenced him to 300 to 420 months of imprisonment. Defendant appealed.

## II. Discussion

Defendant argues that the trial court plainly erred by "allowing the State to present substantive evidence of defendant's pre-arrest silence." (capitalization altered). Specifically, Defendant argues that his "right to remain silent under the North Carolina Constitution was violated when Detective Dolenti testified that his refusal to speak with her prompted her to present the case to the District Attorney." Defendant failed to object to Dolenti's testimony at trial, and we thus review only for plain error. *See State v. Stroud*, 252 N.C. App. 200, 211, 797 S.E.2d 34, 43 (2017) ("[W]here an alleged constitutional error occurs during either instructions to the jury or on evidentiary issues, an appellate court must review for plain error if it is specifically and distinctly contended[.]").

"For error to constitute plain error, a defendant must demonstrate that a

fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted). "Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]" *Id.* (quotation marks, brackets, and citations omitted). A defendant cannot show prejudice "when cross-examination elicits testimony substantially similar to the evidence challenged." *State v. Barnett*, 223 N.C. App. 450, 457, 734 S.E.2d 130, 135 (2012) (citation omitted).

"Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose for which the State intends to use such silence." *State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 173-74 (2010) (quoting *State v. Boston*, 191 N.C. App. 637, 648, 663 S.E.2d 886, 894 (2008)). "[A] defendant's pre-arrest silence and post-arrest, pre-*Miranda* warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting that the defendant's prior silence is inconsistent with his present statements at trial." *Id.* at 395, 698 S.E.2d at 174 (citing *Boston*, 191 N.C. App. at 649 n.2, 663 S.E.2d at 894 n.2).

Here, when the State asked Dolenti on direct examination whether she did "anything else as far as [her] investigation after interviewing [J.P.] on May the 27th," Dolenti testified as follows:

> At that point I had already spoken with the attorney that was representing [Defendant] and was unable to get [Defendant] to come in for an interview. So my next step was to consult with the District Attorney's office in reference to the case.

Even assuming arguendo that the trial court erred by admitting this testimony, Defendant elicited substantially similar testimony on cross-examination. The following exchange took place between defense counsel and Dolenti:

> [DEFENSE COUNSEL:] And once you sat down with [J.P.] in that interview on the 27th you took out warrants the next day?
>
> [DOLENTI:] I believe that's the timeline.
>
> [DEFENSE COUNSEL:] So you were still making a decision about what was going to happen with the case until the allegation that he was performing oral sex on [J.P.]?
>
> [DOLENTI:] There was multiple things that kind of came to a head at that point. It was the end of my investigation. [Defendant] wouldn't come into interview and at that point I had no one else to talk to about the case.

By questioning Dolenti on the timeline of her investigation, defense counsel "elicit[ed] testimony substantially similar to the evidence challenged." *Barnett*, 223 N.C. App. at 457, 734 S.E.2d at 135. Defendant thus cannot establish that the admission of Dolenti's direct examination testimony "had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d

at 334 (quotation marks and citations omitted).

Accordingly, the trial court did not plainly err by admitting Dolenti's testimony that she "was unable to get [Defendant] to come in for an interview."

### III.   Conclusion

For the foregoing reasons, we find no plain error.

NO PLAIN ERROR.

Judges TYSON and ARROWOOD concur.