IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-883

Filed 17 September 2024

Gaston County, No. 18 CRS 50862

STATE OF NORTH CAROLINA

v.

VICTOR MANUEL MEDINA NOVA, Defendant.

Appeal by Defendant from judgment entered 12 January 2023 by Judge David A. Phillips in Gaston County Superior Court. Heard in the Court of Appeals 14 August 2024.

*Stephen G. Driggers, for defendant-appellant.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Chris D. Agosto Carreiro, for the State.*

STADING, Judge.

Defendant Victor Manuel Medina Nova appeals from judgment entered after a jury found him guilty of taking indecent liberties with a child. After careful review, we discern no error.

## I. Background

When he was around eight years old, N.R.[1] and his family began attending Casa de Dios Puerta al Cielo ("the church"). By the time he was twelve years old,

---

[1] A pseudonym is used to protect the victim's identity.

N.R. became involved in the church by participating in the worship team as the drummer, operating the audio system during services, and attending youth group. Through his involvement at the church, N.R. had the occasion to meet Defendant.

Defendant is a former adult member of the church who worked with the youth group and the worship team. N.R. began assisting Defendant with the music during church services when he was thirteen years old. At the time, N.R. viewed Defendant as a "mentor" because "he was . . . the only person that was consistent and . . . there for [him]." N.R. discussed many things with Defendant, including his parents and school. Over time, Defendant increasingly engaged in inappropriate behaviors with N.R. including grabbing N.R.'s bottom and touching him when nobody was watching or around.

During a worship practice in the summer of 2014, when N.R. was thirteen years old, he told Defendant of his plans to try out for the school soccer team. Defendant told N.R. that in doing so, N.R. would have to undergo a physical examination and be "check[ed]." Defendant then asked N.R. if he could "check" him and "motioned" for N.R. to "stand beside" a large printer in the room. Defendant then put his hands inside of N.R.'s underwear and nodded his head up and down while fondling N.R.'s genitalia. As N.R. was leaving, Defendant told him not to tell anybody what had happened.

N.R. first reported Defendant's abuse in 2017 to a youth leader at the church. At this time, N.R. learned that he was not the only youth member to have been abused

by Defendant.  Upon hearing that Defendant also abused B.T.,[2] another minor, N.R. came forward and reported Defendant's actions to law enforcement.

On 19 February 2018, Defendant was indicted and charged with one count of taking indecent liberties with a child.  Before trial, the State moved to introduce B.T.'s testimony under Rule of Evidence 404(b).  N.C. Gen. Stat. § 8C-1, R. 404(b) (2023). The trial court granted the State's motion, concluding that "the facts surrounding the [D]efendant's previous child sex offense [were] sufficiently similar to the case before the [c]ourt," and that B.T.'s testimony was relevant to show "motive, intent, modus operandi, preparation, knowledge, identity of the perpetrator, lack of accident and common scheme or plan."  The trial court also concluded "that the temporal proximity between the two offenses [was] not so remote that it would render the evidence inadmissible in the present case," and that "the probative value of the 404(b) evidence outweigh[ed] the potential for unfair prejudice. . . ."

Defendant's trial began on 9 January 2023.  During the trial, the State presented testimony from B.T., testimony from B.T.'s mother, and played a recording of B.T.'s interview with a children's advocacy center.  Before the introduction of this evidence, the trial court instructed:

> Members of the jury, evidence will be presented tending to show that the defendant touched [B.T.'s] genitals. This evidence is received solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed.  That the defendant had the

---

[2] A pseudonym is used to protect the victim's identity.

- 3 -

intent, which is a necessary element of the crime charged in this case. That there existed in the mind of the defendant a plan, scheme, system, or design involving the crime charged in this case. If you believe this evidence, you may consider it but only for the limited purpose for which it is received. You may not consider it for any other purpose.

Thereafter, B.T. testified that he and his parents knew Defendant through the church. B.T. recounted that he and his siblings had stayed with Defendant for several weeks while their parents traveled to Central America. At some point during this stay with Defendant, B.T. was watching TV on the couch alone and Defendant "climbed over [him] . . . started rubbing [his] shoulder . . . and . . . laid down there with [him]." B.T. said that after heading to bed, Defendant entered his bedroom, "got underneath the covers" with him, and started touching him "in his private area and bottom." Defendant then attempted "to make [B.T.] touch his private area. . . . moved [B.T.] onto [his] stomach, and . . . rubb[ed] his private area against [B.T.'s] bottom." B.T.'s mother testified that he was ten years old when this incident occurred.

Defendant moved to dismiss the charge at the close of the State's evidence, arguing that the State failed to put on evidence that Defendant acted "for the purpose of sexual arousal" when he had touched N.R. The State argued that Defendant's intent could be inferred from the character evidence presented by B.T. and Defendant's nodding while touching N.R. The trial court denied Defendant's motion to dismiss. During the presentation of Defendant's evidence, he elected to take the stand and denied having touched N.R. inappropriately. Defendant subsequently

admitted to watching B.T. while his parents were out of town, and he denied ever touching B.T. inappropriately. Defendant again moved for dismissal of the charge at the close of all evidence, which was also denied. After deliberating, the jury delivered a guilty verdict. The trial court sentenced Defendant to sixteen to twenty-nine months in prison and ordered him to register as a sex offender for a period of thirty years. Defendant gave notice of appeal in open court.

## II.    Jurisdiction

This Court has jurisdiction to consider Defendant's appeal under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2023).

## III.    Analysis

Defendant submits one issue for our consideration: whether the trial court erred in admitting testimony under Rule 404(b) that was dissimilar to the crime charged and unfairly prejudicial. After careful review, we hold that the trial court did not err by admitting B.T.'s testimony under Rule 404(b). We also hold that the trial court did not abuse its discretion when conducting a Rule 403 balancing test. N.C. Gen. Stat. § 8C-1, R. 403 (2023).

### A. Standard of Review

This Court reviews the admission of Rule 404(b) evidence by engaging in a two-step analysis: (1) whether the evidence is admissible under Rule 404(b), and (2) whether the trial court abused its discretion in applying a Rule 403 balancing test. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 158-59 (2012) (citation

omitted). "When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling . . . we look to whether the evidence supports the findings and whether the findings support the conclusions." *Id.* at 130, 726 S.E.2d at 159. "We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion." *Id.*

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citations omitted). And "[u]nder the abuse of discretion standard, our role is not to surmise whether we would have disagreed with the trial court, but instead to decide whether the trial court's ruling was so arbitrary it could not have been the result of a reasoned decision." *State v. Turner*, 273 N.C. App. 701, 708, 849 S.E.2d 327, 332 (2020) (citation omitted).

## B. Rule 404(b) Evidence

Defendant contends that the trial court erred by concluding that B.T.'s testimony was admissible under Rule 404(b) because it was not sufficiently similar or temporally proximate. We disagree. Since Defendant does not contest whether B.T.'s testimony was admitted for a proper purpose, our review is limited to the similarity and temporal proximity requirements of Rule 404(b). *State v. Godfrey*, 263 N.C. App. 264, 270, 822 S.E.2d 894, 899 (2018) (citation and internal brackets

omitted) ("when prior incidents are offered for a proper purpose, the ultimate test of admissibility is whether they are sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403.").

Rule 404(b) of the North Carolina Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, R. 404(b). Rule 404(b) is "a rule of inclusion, and evidence of prior bad acts is admissible unless the only reason that the evidence is introduced is to show the defendant's propensity for committing a crime like the act charged." *State v. Pickens*, 385 N.C. 351, 356, 893 S.E.2d 194, 198 (2023) (citation omitted). If a party offers evidence under Rule 404(b), it "should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence." *State v. al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) (citation omitted). That said, our courts have "liberal[ly] . . . allow[ed] evidence of similar offenses in trials on sexual crime charges." *State v. Frazier*, 344 N.C. 611, 615, 476 S.E.2d 297, 300 (1996) (citation omitted). "This is particularly true where the fact sought to be proved is the defendant's intent to commit a similar sexual offense for which the defendant has been charged." *State v. White*, 331 N.C. 604, 612, 419 S.E.2d 557, 561-62 (1992)

(citation omitted).

The admission of evidence under Rule 404(b) is "constrained by the requirements of similarity and temporal proximity." *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (citation omitted). "Prior acts are sufficiently similar 'if there are some unusual facts present in both crimes' that would indicate that the same person committed them." *Id.* at 131, 726 S.E.2d at 159 (quoting *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991)). But "[w]e do not require that the similarities 'rise to the level of the unique and bizarre.'" *Id.* (quoting *State v. Green*, 321 N.C. 594, 604, 365 S.E.2d 587, 593 (1988)). "Our case law is clear that near identical circumstances are not required . . . ; rather, the incidents need only share some unusual facts that go to a purpose other than propensity for the evidence to be admissible." *Id.* at 132, 726 S.E.2d at 160 (internal quotation marks and citations omitted).

Defendant acknowledges that Rule 404(b) is a rule of inclusion but argues the similarity and temporal requirements of *Beckelheimer* are not met here. *Beckelheimer,* 366 N.C. 127, 131, 726 S.E.2d 156, 159. In *Beckelheimer*, the defendant was charged with three counts of indecent liberties with a child and one count of first-degree sexual offense after he "placed his hands in the victim's pants, then unzipped the victim's pants and performed oral sex on him while holding him down." *Id.* at 128, 726 S.E.2d at 157. At trial, the State offered prior acts evidence from the victim's half-brother pursuant to Rule 404(b). *Id.* The half-brother testified that when he

was about thirteen years old, "defendant . . . touched [his] genital area outside of his clothes while pretending to be asleep, . . . reach[ed] inside his pants to touch his genitals, [and] . . . performed oral sex on him." *Id.* at 129, 726 S.E.2d at 158. The trial court concluded that the prior act contained sufficient similarities with respect to the victim's age, the location of the abuse, and "how the occurrences were brought about." *Id.* at 131, 726 S.E.2d at 159. Although the half-brother's assault took place "ten to [twelve] years ago," the trial court "concluded that given the similarities, particularly the location of the occurrence, how the occurrences were brought about, and the age range of each of the alleged victims at the time of the acts which occurred in the bedroom, that temporal proximity is reasonable." *Id.* at 129, 726 S.E.2d at 158.

Thereafter, the *Beckelheimer* defendant appealed the introduction of the half-brother's testimony on the grounds of similarity and temporal proximity. *Id.* at 129-30, 726 S.E.2d at 158. Our Supreme Court held that there was sufficient similarity and temporal proximity "to support the State's theory of modus operandi in th[e] case." *Id.* In reaching this decision, the court noted that Rule 404(b) does not "require circumstances to be all but identical for evidence to be admissible. . . ." *Id.* at 132, 726 S.E.2d at 160 (citation omitted). Rather, "the incidents need only share some unusual facts that go to a purpose other than propensity." *Id.* (internal quotation marks and citations omitted). As to the issue of temporal proximity, the court noted that "[r]emoteness in time is less important when the other crime is admitted because its *modus operandi* is so strikingly similar to the *modus operandi* of the crime being

tried as to permit a reasonable inference that the same person committed both crimes." *Id.* at 132-33, 726 S.E.2d at 160 (citation omitted). In these types of cases, "remoteness in time goes to the weight of the evidence rather than its admissibility." *Id.* at 133, 726 S.E.2d at 160 (citations omitted).

Here, the trial court's findings support its conclusion that B.T.'s testimony satisfied the admissibility requirements of Rule 404(b) because there are sufficient similarities between the two alleged incidents. Contrary to Defendant's urging, B.T. and N.R. were sufficiently close in age at the time of the alleged acts. Both victims were young boys—B.T. was ten years old, and N.R. was thirteen.[3] Defendant also seeks to differentiate between the setting as one alleged incident occurred in a back room of the church and the other occurred in a bedroom. This distinction of exact setting is one of lesser significance than the trial court's finding Defendant's behavior taking place when both boys were isolated away from adults. Defendant then attempts to juxtapose the trial court's findings regarding acts of abuse because Defendant not only touched B.T.'s "genital area"—as he did with N.R.—but he also "pressed his genitals into [B.T.'s] buttocks region." Evidence of Defendant's additional acts committed against B.T. does not negate the similarity of the initial act committed against both boys. Furthermore, the trial court found, and evidence

---

[3] Citing page fourteen of the record, Defendant's brief asserts that "the incident with N.R. occurred in 2014, when N.R. was 14 years old." However, pages three and twelve of the record show that N.R. was still thirteen on the day of the incident. Furthermore, the trial court's order states on the same page cited by Defendant that "[t]he victim . . . was 13 years of age. . . ."

shows, a key similarity in that Defendant met and developed relationships with both boys through the church. Thus, there are "some unusual facts present in both crimes that would indicate that the same person," Defendant, "committed them." *Id.* at 131, 726 S.E.2d at 159 (citations and internal quotation marks omitted).

Although there is no brightline rule addressing how much time is too remote to show temporal proximity, the incident with N.R. occurred only two years before the incident with B.T. *See Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160 (a ten-to-twelve-year separation between two instances is reasonable if the "*modus operandi* is so strikingly similar to the *modus operandi* of the crime being tried."); *see also State v. Jones*, 322 N.C. 585, 590, 369 S.E.2d 822, 825 (1988) (a seven-year gap between prior acts and the charged acts rendered 404(b) evidence inadmissible since "its probative impact . . . [amounted to] little more than character evidence illustrating the predisposition of the accused."). Here, the modus operandi of the crime being tried is not only strikingly similar to B.T.'s testimony, but also occurred only two years earlier. Accordingly, the temporal proximity requirement of Rule 404(b) has been sufficiently satisfied.

We hold that the trial court did not err by concluding that B.T.'s testimony was admissible because the prior act was sufficiently similar and temporally proximate to the incident involving N.R. *Id.* at 132, 726 S.E.2d at 159 (citation omitted).

## C. Rule 403 Balancing Test

Defendant next contends that the trial court abused its discretion by admitting B.T.'s testimony because its probative value was outweighed by unfair prejudice pursuant to Rule 403. Defendant argues that "the jury could not properly evaluate N.R.'s credibility, given the over-persuasive impact of B.T.'s 404(b) evidence." We disagree.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, R. 403. "Unfair prejudice, as used in Rule 403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. Wilson*, 345 N.C. 119, 127, 478 S.E.2d 507, 513 (1996) (citations and internal quotation marks omitted). "Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question is one of degree." *State v. Weathers*, 339 N.C. 441, 449, 451 S.E.2d 266, 270 (1994). "In general, the exclusion of [404(b)] evidence under the balancing test of Rule 403 of the North Carolina Rules of Evidence is within the trial court's sound discretion." *Wilson*, 345 N.C. at 127, 478 S.E.2d at 513 (citation omitted). "In our review, we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record." *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008) (citations and internal quotation marks omitted).

Here, the trial court concluded that "the probative value of the 404(b) evidence outweigh[ed] the potential for unfair prejudice in that the evidence is relevant to show motive, intent, modus operandi, preparation, knowledge, identity of the perpetrator, lack of accident, and common scheme or plan." The trial court's conclusion is supported by reason because both instances involved "young [h]ispanic males. . . . both knew [ ] [D]efendant through the church. Both allegations involved [ ] [D]efendant fondling each young man's [genitals]. . . . [and] in each case, [ ] [D]efendant isolated the victim away from other adults." These similarities also are fairly supported by the record because "the trial court conduct[ed] voir dire on the evidence, ma[de] extensive findings, [and] concluded the evidence [was] relevant for a purpose such as showing common plan. . . ."

The trial court also properly curtailed the risk of unfair prejudice by issuing a limiting jury instruction as follows: "[i]f you believe this evidence, you may consider it but only for the limited purpose for which it is received. You may not consider it for any other purpose." *See State v. Barnett*, 223 N.C. App. 450, 456, 734 S.E.2d 130, 135 (2012) ("Limiting instructions mitigate the danger of unfair prejudice to the defendant"). By limiting the scope in which the jury could view B.T.'s testimony, the judge mitigated the risk of the evidence having an "undue tendency to suggest decision on an improper basis." *Wilson*, 345 N.C. at 127, 478 S.E.2d at 513 (citations and internal quotation marks omitted). For these reasons, we conclude that the trial court's ruling was not "arbitrary," but was "the result of a reasoned decision." *Turner*,

273 N.C. App. at 708, 849 S.E.2d at 332 (citation omitted).

The trial court's conclusion following a Rule 403 balancing test was well-reasoned and rests within its sound discretion. Any risk of unfair prejudice was adequately tempered by the trial court's limiting instruction.

## IV. Conclusion

We hold that the trial court did not err by admitting B.T.'s testimony because it satisfies the similarity and temporal proximity requirements of Rule 404(b). We also hold that the trial court did not abuse its discretion in determining that B.T.'s testimony was more probative than prejudicial after conducting a Rule 403 balancing test. There was thus no error at trial, and we affirm the judgment.

NO ERROR.

Judges TYSON and THOMPSON concur.